IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-00236-PAB-MDB

LEWIS ENGLEDOWL,

Plaintiff,

v.

LIBERTY MUTUAL PERSONAL INSURANCE COMPANY,

Defendant.

---

**ORDER**

---

This matter comes before the Court on the Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Docket No. 22]. Plaintiff filed a response,[1] Docket No. 27, and defendant filed a reply. Docket No. 31. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. UNDISPUTED FACTS[2]

On April 28, 2022, plaintiff Lewis Engledowl's vehicle was rear-ended by a vehicle driven by David Reyhons. Docket No. 22 at 2, ¶ 1. At the time of the automobile accident, plaintiff was insured by defendant Liberty Mutual Personal Insurance Company. *Id.*, ¶ 3. Plaintiff's policy covered Underinsured Motorist Bodily

[1] Plaintiff's first response was stricken by the Court for, among other reasons, failure to comply with the Court's practice standard of admitting or denying the asserted facts set forth by the movant in separate paragraphs in a section styled Response to Statement of Undisputed Material Facts. Docket No. 23. Plaintiff filed a second response which was stricken for failure to comply with the Court's page limitations. Docket No. 25. Plaintiff filed a third response, which is the operative response in this case. Docket No. 27.

[2] The following facts are undisputed unless otherwise noted.

Injury ("UIM") coverage with limits of $100,000 per person. *Id.* UIM coverage applies when the underlying bodily injury liability limit has been exhausted by payment of settlement, and where the amount paid for bodily injury under such policy is not enough to pay the full amount the insured is entitled to recover as damages. *Id.* at 3, ¶ 5.

After plaintiff's accident, on April 28, 2022, plaintiff drove himself to Matthews-Vu Medical Group and was examined by Cindy Lockett, M.D. *Id.*, ¶ 6. Plaintiff's chief complaint was reported as "[s]evere neck pain after MVA" and his History of Present Illness reported "[a]ll pain in neck and does not radiate into arms."[3] *Id.* During this same visit, on April 28, 2022, plaintiff had both a CT scan and an X-Ray of his spine. *Id.*, ¶¶ 7-8. The CT scan showed "[n]ormal alignment of the cervical spine without evidence of fracture."[4] *Id.*, ¶ 7. The X-Ray showed "straightening of the normal cervical lordosis," which may have been related to a muscle spasm, and "mild spondylosis" with "no evidence of facture." *Id.*, ¶ 8. Dr. Lockett diagnosed plaintiff with motor-vehicle-accident-related acute neck pain and whiplash injury, and referred plaintiff to physical therapy for eight visits.[5] *Id.*, ¶ 9. On May 3, 2022, plaintiff went back to the Matthews-

[3] Plaintiff denies this fact on the basis that the "History of Present Illness" is "incomplete." Docket No. 27 at 2, ¶ 6. However, the fact that defendant did not include plaintiff's entire History of Present Illness does not negate that the History of Present Illness stated that "[a]ll pain in neck and does not radiate into arms." Thus, the Court deems this fact admitted.

[4] Plaintiff denies this fact on the basis that the "[r]epresentation of what CT scan shows is incomplete." Docket No. 27 at 2, ¶ 7. Again, the fact that defendant's asserted fact is supposedly incomplete does not negate the accuracy of what defendant asserted. Plaintiff does not explain how that representation is "incomplete." Docket No. 27 at 2, ¶ 7. Thus, the Court deems this fact admitted.

[5] Plaintiff denies this fact on the basis that Dr. Lockett's notes state "physical therapy consultation requested." Docket No. 27 at 2, ¶ 9. The fact that plaintiff requested a consultation with a physical therapist does not negate the fact that Dr. Lockett referred plaintiff to physical therapy. Thus, the Court deems this fact admitted.

Vu Medical Group and saw Dr. Goroh Okazaki. *Id.* at 4, ¶ 11. Dr. Okazaki noted that physical therapy was recommended. *Id.* Plaintiff did not participate in any formal physical therapy treatment. *Id.* at 6, ¶ 31.

On April 28, 2022, after his appointment with Dr. Lockett, plaintiff went to Colorado Springs Spine & Injury Clinic to see his chiropractor, Dr. Ronald Salvaggione. *Id.* at 3, ¶ 10. Dr. Salvaggione documented that plaintiff "has been feeling moderately severe constant pain bilaterally in the neck area" and that plaintiff "reports pain radiating to the posterior right upper shoulder, posterior left upper shoulder, right medial upper thoracic region, left medial upper thoracic region, and left deltoid area."[6] *Id.* On May 19, 2022, Dr. Salvaggione assigned plaintiff a 25% whole body impairment based on his cervical spine injuries. *Id.* at 4, ¶ 13.

On June 8, 2022, Dr. Salvaggione indicated that plaintiff "is determined to be at an overall status of subacute." *Id.*, ¶ 15. On August 2, 2022, Dr. Salvaggione stated that plaintiff entered "a more intermediate" stage of his treatment. *Id.*, ¶ 16. Three days later, on August 5, 2022, Dr. Salvaggione noted that plaintiff was back in the "subacute" phase. *Id.*, ¶ 17. Five days later, on August 10, 2022, Dr. Salvaggione noted that plaintiff was back at the intermediate stage. *Id.*, ¶ 18. On August 23, 2022, Dr. Salvaggione reported that plaintiff was at an overall status of improving. *Id.* at 5, ¶ 19. On August 26, 2022, plaintiff's condition was "improving as expected" and he was

---

[6] Plaintiff denies this fact on the basis that "Mr. Engledowl not Dr. Salvaggione reported symptoms." Docket No. 27 at 3, ¶ 10. The obvious meaning of the factual assertion is that Dr. Salvaggione "recorded" or "noted" plaintiff's description of symptoms. Plaintiff does not deny that Dr. Salvaggione's report includes the quoted language; indeed, plaintiff cites to a portion of the record which contains the quoted language. Docket No. 27 at 3, ¶ 10; *see also* Docket No. 22-5 at 31. Thus, the Court deems this fact admitted.

instructed to return once a week. *Id.*, ¶ 21. On October 28, 2022, Dr. Salvaggione described plaintiff's status as approaching Maximum Medical Improvement ("MMI") and stated that plaintiff should make appointments as needed. *Id.*, ¶ 22. On November 18, 2022, Dr. Salvaggione reported that plaintiff was at subacute status and that he should return two times a week.[7] *Id.*, ¶ 23. On December 2, 2022, plaintiff was described as having entered "a more intermediate stage."[8] *Id.* at 5, ¶ 24. On December 5, 2022, Dr. Salvaggione reported that plaintiff was "approaching MMI" and the plan was for him to "call for an appointment as needed." *Id.*, ¶ 25. Plaintiff returned to Dr. Salvaggione on December 7, 2022, December 9, 2022, December 16, 2022, and December 21, 2022, with Dr. Salvaggione's notes indicating that plaintiff was approaching MMI. *Id.*, ¶ 26. On January 6, 2023, approximately eight months after the accident, Dr. Salvaggione noted that plaintiff's symptoms reflected an "intermediate subacute nature" and that he should return two times per week. *Id.*, ¶ 27. One year after the accident, on April 28, 2023, Dr. Salvaggione reported that plaintiff had entered "a more intermediate stage" and should return weekly. *Id.* at 6, ¶ 28. On June 20, 2023, Dr. Salvaggione reported that plaintiff's condition "has progressed to the subacute phase." *Id.*, ¶ 29. On July 20,

[7] Defendant asserts that Dr. Salvaggione reported that plaintiff "had reverted to 'subacute status.'" Docket No. 22 at 5, ¶ 23. Plaintiff denies this fact on the basis that Dr. Salvaggione did not use the word "reverted." Docket No. 27 at 3, ¶ 23. Plaintiff does not deny that Dr. Salvaggione reported that plaintiff was at subacute status. *Id.* Thus, the Court deems it admitted that Dr. Salvaggione reported that plaintiff was at subacute status.

[8] Defendant asserts that plaintiff "was described as entering 'a more intermediate stage.'" Docket No. 22 at 5, ¶ 24. Plaintiff denies this fact on the basis that Dr. Salvaggione's notes state that plaintiff has "entered" a more intermediate stage, not that plaintiff was "entering" a more intermediate stage. Docket No. 27 at 3, ¶ 24. The Court deems it admitted that Dr. Salvaggione reported that plaintiff had entered a more intermediate stage.

2023, Dr. Salvaggione sent a report to plaintiff's counsel indicating that plaintiff had reached MMI and would need chiropractic treatment "at a frequency of a minimum of 4 times per month at a fee of $75 per treatment in today's dollars, Decompression fees are $51/treatment on an ongoing basis for the next 3-5 years." *Id.*, ¶ 30.

On October 17, 2023, plaintiff's counsel submitted written notice of plaintiff's UIM claim to defendant and sent defendant a copy of his settlement demand letter to the liability carrier of Mr. Reyhons. *Id.*, ¶ 32. On October 27, 2023, Mr. Kraft—an insurance adjuster for defendant—noted that plaintiff's claimed past medical expenses and loss of earnings were within the tortfeasor's policy limits, and that claimed future medical expenses and loss of earnings needed to be reviewed. *Id.*, ¶ 33. Mr. Kraft also noted the potential need for an independent medical review "due to 14 months of chiro care and over 65 visits." *Id.* On November 1, 2023, Mr. Kraft evaluated plaintiff's UIM claim.[9] *Id.* at 7, ¶ 34. Mr. Kraft's evaluation included special damages for plaintiff's past medical treatment totaling $14,789.15, all his claimed past income loss of $14,770.00, and incidental expenses of $603.96, for a total of $30,163.11 in special damages. *Id.*, ¶ 35.

On June 3, 2022, plaintiff had an MRI of his cervical spine, per the referral of Dr. Salvaggione. *Id.* at 4, ¶ 14. Alysha Vartevan, DO, read the MRI as showing broad based disc herniations at C3 through the C7 levels with impingement on the ventral

[9] Defendant asserts that Mr. Kraft "completed his first evaluation of Plaintiff's UIM claim." Docket No. 22 at 7, ¶ 34. Plaintiff denies this fact on the basis that defendant's citation to the evaluation does not explicitly state that it is complete. Docket No. 27 at 4, ¶ 34. Plaintiff does not deny that the evaluation occurred on November 1, 2023. *Id.* Thus, the Court deems it admitted that Mr. Kraft evaluated plaintiff's UIM claim on November 1, 2023.

thecal sac at those levels. *Id.* Dr. Vartevan also read the MRI as showing foraminal stenosis at C3-C4 and C6-C7. *Id.* On November 1, 2023, the same day Mr. Kraft evaluated plaintiff's UIM claim, defendant requested plaintiff's medical bills, records, and films from the June 3, 2022 cervical spine MRI. *Id.* at 7, ¶ 38. Mr. Kraft also informed plaintiff's counsel by telephone that an independent medical review would be conducted. *Id.*, ¶ 39. Plaintiff sent his cervical spine MRI images to defendant on November 20, 2023. *Id.*, ¶ 40. Plaintiff sent defendant additional treatment records on December 4, 2023. *Id.* at 8, ¶ 41.

On December 14, 2023, defendant requested a medical records review by a chiropractor. *Id.*, ¶ 42. On December 27, 2023, Dr. Nehring—a chiropractor—completed an independent medical report for defendant. *Id.*, ¶ 43. Dr. Nehring opined that plaintiff likely obtained MMI with Dr. Salvaggione within the first 12-15 visits. *Id.*, ¶ 44. Dr. Nehring also stated that plaintiff failed to mitigate damages through continuing treatment with Dr. Salvaggione and the lack of follow-up with recommended physical therapy. *Id.* On January 5, 2024, defendant requested an independent medical review from a radiologist of plaintiff's cervical and right knee MRIs. *Id.*, ¶ 45. On February 9, 2024, defendant received a report from Dr. James Piko analyzing plaintiff's MRI images.[10] *Id.*, ¶ 46. Dr. Piko reported disc bulging at C3 through C7 levels, spondylotic ridging posterior laterally greater on the left at C3-4, and no acute disc herniation or

[10] Defendant states that this report was received on February 9, 2025. Docket No. 22 at 8, ¶ 46. The Court presumes this is a typographical error because defendant later states that Mr. Kraft sent this report to plaintiff on February 22, 2024. *Id.* at 9, ¶ 48. Mr. Kraft could not have sent a report that he did not yet have. Thus, the Court presumes the accurate date is February 9, 2024.

central canal stenosis. *Id.* On February 22, 2024, Mr. Kraft reviewed Dr. Nehring's report, noting,

> IMR - Michael J Nehring, DC, DABCO, DACCC Injuries: strain to neck and trapezius soft tissues. Pre-existing: advanced degenerative changes in cervical spine. Reasonable treatment: 99203 initial exam ($321.00), and 97124 massage ($116.00). Unrelated treatment: mid and low back conservative therapy. Future care: None of the health care providers have recommended additional diagnostic testing. Dr. Salvaggione recommending continued chiropractic care, which is not supported. Patient has been paying for maintenance care, which is unrelated to the MVA.

*Id.*, ¶ 47. On February 22, 2024, Mr. Kraft sent a copy of Dr. Nehring and Dr. Piko's reports to plaintiff and stated his belief that plaintiff had been "adequately indemnified by the at-fault carrier." *Id.* at 9, ¶ 48. On March 12, 2024, plaintiff informed defendant that Dr. Nehring's credibility was suspect and that plaintiff did not agree with defendant's position. *Id.*, ¶ 49. On March 13, 2024, Mr. Kraft responded to plaintiff, stating that the evaluation of plaintiff's claim would not change. *Id.*, ¶ 50.

On July 23, 2024, plaintiff requested permission from defendant to settle with Mr. Reyhons for the $50,000 liability policy limit. *Id.*, ¶ 51. On July 26, 2024, defendant provided written consent to plaintiff to settle for the $50,000 offered. *Id.*, ¶ 52. On September 30, 2024, Mr. Kraft asked plaintiff if he planned to submit any additional information regarding his UIM claim. *Id.*,¶ 53. Plaintiff responded that he expected to move forward with the UIM dispute, reiterating that plaintiff "highly disputes Liberty Mutual's position, especially its reliance on Dr. Nehring." *Id.*, ¶ 54. On December 20, 2024, plaintiff filed a complaint against defendant in state court. *Id.*, ¶ 55. The case was removed to federal court on January 23, 2025. Docket No. 1. Plaintiff has not endorsed an expert to offer opinions regarding insurance industry standards or the

reasonableness of defendant's claim evaluation. Docket No. 22 at 10, ¶ 56. On August 19, 2025, in response to one of defendant's interrogatories, plaintiff stated that, because his treatment is ongoing, he cannot provide an estimate of anticipated economic damages or non-economic damages in this action. *Id.*, ¶ 58.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011). By contrast, where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*,

36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Defendant moves for summary judgment on plaintiff's statutory bad faith claim. Docket No. 22 at 2.

Colo. Rev. Stat. § 10-3-1116(a) provides that people who suffer an unreasonable delay or denial of benefits, as defined in Colo. Rev. Stat. § 10-3-1115, may bring an action for twice the covered benefit and attorneys' fees. *See* Colo. Rev. Stat. § 10-3-1116. Pursuant to § 10-3-1115, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). An insurer's conduct is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). The determination of whether an insurer has breached its duties to the insured is one of reasonableness under the circumstances. *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008). Acting "without a reasonable basis" has been construed to mean pursuing a groundless position that is not supported by credible evidence. *Cooper v. Shelter Gen. Ins. Co.*, 653 F. Supp. 3d 873, 878 (D. Colo. 2023) (quoting *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4326269, at *5 (D. Colo. Sept. 23, 2021)).

The question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim. *Estate of Morris*, 192 P.3d at 523. The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards. *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018). Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury. *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law. *Estate of Morris*, 192 P.3d at 524.

Here, defendant argues that, as a matter of law, it acted reasonably because it based its evaluation of plaintiff's UIM claim on plaintiff's medical records and Dr. Piko and Dr. Nehring's reports. Docket No. 22 at 17-18. Multiple courts in this district have found that an insurer acted reasonably when basing its decision to deny a claim on the reports of experts retained by the insurer. *See Marra v. Owners Ins. Co.*, No. 24-cv-01547-NYW-MDB, 2026 WL 503305, at *3-4 (D. Colo. Feb. 24, 2026) (finding that defendant was reasonable as a matter of law when relying on its own expert's report, even when that report contradicted plaintiff's experts and treating providers); *Ramsey v. State Farm Fire & Cas. Co.*, No. 24-cv-00902-SKC-MDB, 2025 WL 2783573, at *3 (D. Colo. Sept. 30, 2025) (finding that no reasonable jury could conclude that the defendant delayed or denied payment of plaintiff's UIM claim without a reasonable basis when the defendant based its decision on two qualified experts it retained); *El Dueno, LLC v. Mid-Century Ins. Co.*, No. 21-cv-01532-DDD-JPO, 2024 WL 1236245, at *2 (D. Colo. Feb. 23, 2024) (finding that defendant acted reasonably when basing its decision to deny

coverage on its own qualified expert); *Avalon Condo. Ass'n, Inc v. Secura Ins.*, No. 14-cv-00200-CMA-KMT, 2015 WL 5655528, at *5 (D. Colo. Sept. 25, 2015) (finding that plaintiff's disagreement with defendant's expert was insufficient to sustain plaintiff's bad faith claim).

Nevertheless, plaintiff argues that it was unreasonable for defendant to rely on Dr. Nehring's report because Dr. Nehring is "highly biased" and "unreliable."[11] Docket No. 27 at 12. Plaintiff supports this claim in a section of his brief titled "Facts Supporting Mr. Engledowl's Claim of Unreasonable Denial." *Id.* at 11. Throughout this section, plaintiff puts forth many new facts, citing various exhibits attached to plaintiff's response. *Id.* at 11-17. However, the Court's Practice Standards state that, if the party opposing the summary judgment motion

> believes that there exist additional disputed questions of fact . . ., the party shall, in a separate section of the party's brief styled "Statement of Additional Disputed Facts," set forth in simple, declarative sentences, separately numbered and paragraphed, each additional, material disputed fact which undercuts movant's claim that it is entitled to judgment as a matter of law. Each separately numbered and paragraphed fact shall be accompanied by a specific reference to material in the record which establishes the fact or at least demonstrates that it is disputed. Similarly, if the party opposing the motion believes that there exist additional undisputed facts, the party shall, in a separate section of the party's brief styled "Statement of Additional Undisputed Facts," set forth in simple, declarative sentences, separately numbered and paragraphed, each additional, material undisputed fact which undercuts movant's claim that it is entitled to judgment as a matter of law. Each separately numbered and paragraphed fact shall be accompanied by a specific reference to material in the record which establishes the fact or at least demonstrates that it is undisputed.

---

[11] Plaintiff does not argue that Dr. Piko is biased or unreliable. *See generally* Docket No. 27.

Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.v. (emphasis omitted). Plaintiff did not include a "Statement of Additional Disputed Facts" or "Statement of Additional Undisputed Facts" section in his brief. *See generally* Docket No. 27. Instead, plaintiff simply cites various exhibits.[12] *Id.* at 11-17. As the Practice Standard regarding summary judgment motions emphasizes, the "sole purpose of these procedures is to establish facts and determine which of them are in dispute." Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.vii. Plaintiff has compromised this process by not including a compliant statement of facts in his response. Had he done so, defendant would have been required to admit or deny those facts and provide a basis for any denials, which would assist the Court in determining what facts are undisputed and what facts are disputed.

Moreover, the requirement in the Practice Standards that a party opposing summary judgment state its facts in the form of statements is consistent with Fed. R. Civ. P. 56(e), which refers to "assertions of fact." Rule 56 distinguishes such assertions or statements of fact from the evidence that supports the assertions. *See, e.g.*, Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record"). Thus,

[12] Plaintiff also cites to one of defendant's undisputed facts to support the proposition that "it took only 10 days after receiving a demand package of hundreds of pages of medical records, billing records, police reports, pictures, statements, etc., [for defendant] to deny Mr. Engledowl's claim." Docket No. 27 at 11-12. The undisputed fact plaintiff cites does not support that proposition. Rather, it states that, ten days after receiving plaintiff's notice of his UIM claim, Mr. Kraft determined that plaintiff's past medical expenses and loss of earnings were within the underlying limits, but that his claimed future medical expenses and loss of earnings needed to be reviewed. Docket No. 22 at 6, ¶¶ 32-33. There is no evidence that defendant denied plaintiff's UIM claim 10 days after receiving notice of such claim.

for plaintiff to simply cite exhibits in its response frustrates the summary judgment process and violates the Court's Practice Standards. The summary judgment process is further frustrated by plaintiff's repeated failure to cite specific portions of the exhibits.[13] Docket No. 27 at 12-15. Thus, even if plaintiff had presented this evidence in a proper facts section, it would still run afoul of the Court's practice standards, which state that "[e]ach separately numbered and paragraphed fact must be accompanied by a specific reference to material in the record which establishes that fact. General references to pleadings, depositions, or documents are insufficient if the document is over one page in length." Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.ii (emphasis omitted).

As a result, the Court will not consider plaintiff's evidence either to establish an undisputed fact or to raise a dispute of material fact. As the Practice Standard on summary judgment states, "[f]ailure to follow these procedures may result in an order striking or denying the motion or brief or may cause the court to deem certain facts as admitted." Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.ix. Plaintiff's failure to follow the Practice Standards is especially problematic given that the Court struck plaintiff's response twice for failure to comply with the Practice Standards. Docket Nos. 24, 26.

Even if the Court did review plaintiff's evidence, it would not find that it creates a genuine issue of material fact as to whether defendant acted reasonably. Much of plaintiff's evidence is used to establish reasons why plaintiff disagrees with Dr.

[13] In some portions of the response, plaintiff does cite specific portions of an exhibit. Docket No. 27 at 13-16.

Nehring's report. Docket No. 27 at 12-16. But "mere disagreement of this sort is insufficient for Plaintiff to sustain [his] bad faith claim." *Avalon*, 2015 WL 5655528, at *5. Plaintiff also asserts that Dr. Nehring is highly biased and unreliable. Docket No. 27 at 12. For support, plaintiff cites an email his attorney sent to defendant. Docket No. 27-6. While the email says the author has had "numerous experiences with Dr. Nehring," *id.* at 1, the email does not explain whether the author has personal knowledge of his complaints about Dr. Nehring. The email claims that Dr. Nehring's "usual stated belief is chiropractic care should last no more than 8 weeks" and that "[t]his has become his usual opinion since 2004." *Id.* at 1. The email goes on to state that Dr. Nehring had a different opinion prior to 2004, calling this "an amazing feat of hypocrisy." *Id.* The email does not contain any support for this allegation, and "unsupported conclusory assertions do not create a genuine issue of material fact." *Stanley v. Abacus Tech. Corp.*, 359 F. App'x 926, 931 (10th Cir. 2010) (unpublished). Thus, the Court will not consider plaintiff's unsubstantiated claims of bias.

Moreover, "there is social utility in allowing no-fault insurance companies to request independent medical examinations performed by physicians of their choice. Insurance companies must be accorded wide latitude in their ability to investigate claims and to resist false or unfounded efforts to obtain funds not available under the contract of insurance." *Martinez v. Lewis*, 942 P.2d 1219, 1224 (Colo. App. 1996) (internal quotations, citation, and alteration omitted). That is particularly true here, where Dr. Salvaggione regularly changed his recommendation for how often plaintiff should see him, and where Dr. Salvaggione's reports fluctuated between finding plaintiff's status was subacute, intermediate, and approaching MMI.

Plaintiff has not endorsed an expert to offer opinions regarding insurance industry standards or the unreasonableness of defendant's decision not to cover some of plaintiff's chiropractor sessions. Plaintiff's sole argument for why he does not need an insurance industry expert in this case is that the UIM claim "is not complicated and can be understood by an ordinary person without the assistance of an expert." Docket No. 27 at 10. But as one court in this district stated, "[i]ndustry standards supply the guidepost to assess the reasonableness of the insurer's conduct . . . and without some articulation about what industry standard [defendant] violated, no reasonable jury could find that [defendant] acted unreasonably." *Marra*, 2026 WL 503305, at *4 (internal quotations and citations omitted). While plaintiff does not provide an expert report on insurance industry standards, he does list various improper insurance practices which could lead to a finding of bad faith. Docket No. 27 at 9-10. Plaintiff does not, however, provide any evidence or explanation as to how defendant engaged in the listed improper practices, instead merely stating that "[m]any of these issues are the same issues we see in this case."[14] *Id.* at 10.

In sum, plaintiff has not properly presented any evidence raising a genuine issue of material fact as to whether defendant acted unreasonably in handling his claim. Rather, plaintiff seems to simply dispute the valuation of his claim. But "[u]nreasonable conduct cannot be established by virtue of a mere disagreement of value between the

[14] Plaintiff also discusses potential issues that arise from Mr. Kraft's denial of plaintiff's claims for future medical care and treatment. Docket No. 27 at 12-13. However, Dr. Nehring's report opines that plaintiff is merely receiving maintenance care unrelated to the underlying car accident and that plaintiff does not require any future treatment. Docket No. 27-4 at 12. As discussed above, disagreement with Dr. Nehring's report does not create a genuine dispute of material fact as to plaintiff's bad faith claim.

insured and insurer." *Yale Condominiums Homeowner's Ass'n, Inc. v. Am. Fam. Mut. Ins. Co., S.I.*, No. 19-cv-02477-KMT, 2021 WL 1222518, at *7 (D. Colo. Apr. 1, 2021); *see also Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 836 (D. Colo. 2016) ("It is not sufficient for an insured to simply tender a different valuation of a claim; indeed, were the Court to hold that a mere disagreement between parties as to the valuation of a claim created a triable bad faith claim, essentially every insurance dispute would proceed to trial on such a claim, as disputes between the insurer and insured over the proper valuation of the loss are routine.").

## IV. CONCLUSION

Therefore, it is

**ORDERED** that the Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Docket No. 22] is **GRANTED**. It is further

**ORDERED** that plaintiff's statutory bad faith claim is **DISMISSED with prejudice**.

DATED September 15, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge